SPIRELLA CO. v. NUBONE CORSET CO. et al.

(District Court, W. D. Pennsylvania. January 7, 1914.)

No. 175.

PATENTS (§ 328*)—ANTICIPATION—METHOD OF MAKING GARMENT STAYS.
 The Beeman patent No. 1,002,488, for a method of making garment stays, *held* void for anticipation.

In Equity. Suit by the Spirella Company against the Nubone Corset Company and others. On final hearing. Decree for defendants.

Fred. W. Winter, of Pittsburgh, Pa., for complainant.
J. C. Sturgeon, of Erie, Pa., for defendants.

ORR, District Judge. This is a patent suit involving United States patent No. 1,002,488, issued under date of September 5, 1911, to M. M. Beeman, for a "Method of Making Garment-Stays." The plaintiff charges that the defendants are infringing. The defendants reply that there is nothing new or novel in the method of the patent, and that therefore the patent is invalid. While the case is not free from complexity, yet it is free from doubt after an examination of the patent in suit and prior patents and a careful consideration of the evidence produced at the trial.

In the specification Beeman says:

"The object of the invention is to provide a method of forming said stays whereby a sufficiently rigid stay can be formed from comparatively light wire, and particularly a stay which has greater resistance to bending in one direction than in the opposite, and one which will not take a permanent set."

The complete apparatus for producing the stay is not shown in the patent. It is not intended to be shown, for the specification says:

"The bending may be performed in any suitable way, and is shown as carried out by mechanical means."

The drawings illustrate the bending fingers and the wire, which is taken by one of the bending fingers and bent around a pin to form a loop or eye, and then carried by said finger across the stay, where it is caught by a pin, after which it is carried by the other bending finger

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to the side of the stay from which it first came, thus forming a loop or eye on each side of the stay. The loops on each side of the stay are depressed and carried underneath previously formed loops. The unformed portion of the wire is held by a guide inclined downwardly from the plane of the formed portion of the stay. The specification says that:

"The consequence is that the wire is twisted at the loops * * * and is thereby put under an initial torsional strain."

The specification further says:

"The loops of the fabricated portion of the wire are inclined or tilted from the plane of the stay, as shown in Fig. 2, while the unformed portion of the wire stands at the opposite angle or inclination from the plane of the stay. Consequently, when the wire is carried across from side to side and the eye is tilted to bring it to the inclined position, a certain amount of twist is necessarily given to the wire. This places the wire under an initial torsional strain. This manner of forming the stays, that is, by holding the unformed portion of the wire at an incline to the formed portion of the stay, and carrying the wire across the stay and simultaneously bending it down, results in depressing the edges of the loops or eyes below the normal plane of the stay, so that the finished stay is somewhat concave on its lower side, as shown at 16, Fig. 5. This formation of the stay gives the same greater stiffness or resistance against bending in a direction away from the hollow or concave side of the stay, this being due in part to the concavity of the stay, in part to the torsional strain in the wire, and in part to the overlapping of the loops so that each loop is supported on one side on an adjacent one."

We notice in the specification, especially in the part last quoted, that the stay intended to be formed in accordance with the method of the patent would have the quality of rigidity by reason of three things: (A) The concavity of the stay; (B) the torsional strain in the wire; and (C) the overlapping of the loops.

The only claim of the patent in issue is the first, which is as follows:

"1. The method of forming garment stays consisting in bending wire at intervals and alternately in opposite directions to form curved edge-forming loops or eyes and transverse connecting portions, and while so bending the edge-forming loops or eyes imparting a twist to the wire and thereby placing the same under initial torsional strain."

Before taking up the consideration of a prior patent upon which the defendants rely, it is deemed proper to consider whether or not the stays alleged by the plaintiff to have been made in accordance with the method of the patent in suit are in any sense different from the stays made prior to the time fixed by Beeman as the date of his invention. The court is not unmindful of the fact that similarity of products or identity of construction of useful articles is not evidence that the methods of producing the results are the same, yet where the advantageous qualities of a product such as corset stays are set forth in the patent, it is helpful sometimes to consider whether or not the product of an earlier date contains the same advantages.

Of the three causes of rigidity mentioned in the specification, one only is apparently new, that is, "the torsional strain in the wire." The concavity of the stays and the overlapping of the loops of the stays manufactured by both plaintiff and defendants in times past are readily observable.

The phrase "torsional strain in the wire" is new, but it is clear that torsional strain in the wire existed in the stays made by both plaintiff and defendants long prior to the period fixed by Beeman as the date of his invention. There seems to be no doubt whatever that by overlapping the loops there is a slight change in the plane of the wire of which those loops are formed. The plane of the wire being changed as the loops are formed, so that one overlaps the other, necessarily causes an initial torsional strain. There is therefore nothing new in the causes of the rigidity of the stays. The most that can be said for the patent in suit is that it provides for a variation in the plane of the wire.

After a careful consideration of all the evidence, we are satisfied that the patent was anticipated by the United States patent to F. W. Mallett, No. 820,510, dated May 15, 1906. That patent is for a machine for forming metallic stays for garments. It represents a complete machine with bending fingers, with a detailed explanation of its several parts and their respective uses. It is not necessary to describe it in detail; $d$ and $d^x$ therein denote the alternately oscillating wire bending fingers. The free end of each finger is provided with a groove or notch $d'$, "which is slightly below the plane of the top of the adjacent bar when in its raised position." The bar carries upon it the stay, and in that bar are pins which form the loops of the stay. The wire is carried through the groove at the end of each finger. From this reference to the specification of the Mallett patent it is seen that there is provision for inclining the wire from the plane of the stay. Again, in the specification of the Mallett patent, it is stated:

"In the release of the loop from the front pin $b$, the wire is allowed to slip longitudinally and causes the released loop to be caught on the rear pin $b^x$, and thus form the loops contiguously side by side and slightly overlapping. The continuation of the alternate action of the bars and fingers forms a metallic band composed of correspondingly shaped loops, disposed alternately in reversed positions. The notches $d'$ of the fingers $d$ $d^x$, receiving the wire through them and being slightly below the top of the raised bar, causes the fingers to bend the wire down across the inner edges of the bars, and thus produce a transverse convexity on the under side of the metallic band formed from the wire. This convexity partly stiffens the said band on one of its sides and increases the flexibility on the opposite side."

Again it is stated with reference to the guide $e$, through which the unformed wire passes to the bending fingers, that it may be raised or lowered and clamped in its desired position, with this further statement:

"Said adjustability of the guide $e$ is desired to direct the delivery of the wire slightly below the plane of the elevated wire-carrying bar, as shown in Fig. 1, and to cause the wire to enter into the notch $d'$ of the finger for the purpose of convexing the wire band, as hereinbefore described."

We find, therefore, in the Mallett patent convexity as a cause of rigidity, while in the patent in suit concavity is specified as a desirable feature. The convexity of the one is the concavity of the other.

We find in the Mallett patent the overlapping of the loops just as in the patent in suit, and we find provision for holding the unformed portion of the wire at an incline to the formed portion of the stay. It is true we find nothing in the Mallett patent with respect to torsional

strain in the wire; but, under all the evidence in this case, torsional strain in the wire was created in the product of the Mallett machine.

The court has reached the conclusion, therefore, that the method in issue which forms the first claim of the patent in suit was necessarily and inevitably practiced in the use of the Mallett machine as early as the summer of 1905, and has been practiced uninterruptedly since that time. For this reason, and because the Mallett machine cannot operate without imparting twist to the wire, and because there is no clear line distinguishing the process and product of the complainant in the early use of the Mallett machine and the process and product of a later date when the method of the patent in suit is claimed to have been used, and because it is impossible to distinguish between the product of complainant in early days and the product of the present day, there is nothing novel in the method of the patent in suit. The patent must therefore be adjudged to be invalid, and the bill of complaint must be dismissed.

Let a decree be drawn.